UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| T.D., | § | |
|     **Plaintiff,** | § | |
| v. | § | NO. EP-21-CV-00219-LS |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § | |
|     **Defendant.** | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff appeals the denial of his application for disability insurance benefits. The parties consent to my determination of the case under 28 U.S.C. § 636(c) and Appendix C of the Local Court Rules for the Western District of Texas. I **AFFIRM** the Commissioner's decision denying Plaintiff's application.

**I.  Facts and Proceedings.**

Plaintiff alleges he became disabled on August 23, 2019[1] because of "Liver sorosis stage 3.5; Edema; Thyroid Issues; Tumor on liver; Uropathy in both hands, legs and arms; and Arthritis in hands."[2] An Administrative Law Judge ("ALJ") held a hearing on March 3, 2021, and heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[3] In an opinion dated March 30, 2021, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.[4] The Appeals Council denied his request for review on July 20, 2021, making the decision of the ALJ the final decision of the Commissioner.[5] Plaintiff argues in

---

[1] R:63.
[2] R:62.
[3] R:36-61.
[4] R:18-31.
[5] R:9-11.

this appeal that the ALJ erred with respect to analyzing Plaintiff's leg swelling, deep tendon reflexes, and urination frequency.

## II. Discussion.

### A. Legal Standards.

Judicial review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the Commissioner applied the proper legal standard.[6] Substantial evidence "is more than a mere scintilla and less than a preponderance."[7] The Commissioner's findings will be upheld if supported by substantial evidence.[8] In evaluating a disability claim, the Commissioner must follow a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant can perform other relevant work.[9]

Courts utilize four elements of proof to determine whether there is substantial evidence of disability: (1) objective medical evidence; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[10] A court cannot, however, reweigh the evidence, try the issues

---

[6] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).
[7] *Hill v. Berryhill*, 718 F. App'x 250, 253-54 (5th Cir. 2018) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th 2002)).
[8] *Masterson*, 309 F.3d at 272.
[9] 20 C.F.R. § 404.1520; *Boyd v. Apfel*, 239 F.3d 698, 704-05 (5th Cir. 2001).
[10] *Perez*, 415 F.3d at 462.

*de novo*, or substitute its judgment for the Commissioner's.[11] The Commissioner, not the courts, must resolve conflicts in the evidence.[12]

### B.   Residual Functional Capacity.

Residual functional capacity, or RFC, is the most an individual can still do despite his or her limitations.[13] The responsibility to determine a claimant's RFC belongs to the ALJ.[14] The ALJ must consider a claimant's abilities despite his or her physical and mental limitations based on the relevant evidence in the record.[15] The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms.[16] An RFC finding is used to determine if the claimant can still do his or her past jobs.[17] If the claimant cannot, the RFC is then used to determine whether the claimant can do other jobs in the national economy.[18]

### C.   The ALJ's Findings.

In this case, the ALJ found that Plaintiff's severe impairments were "cirrhosis of the liver, chronic hepatitis C, morbid obesity, peripheral neuropathy, bilateral carpal tunnel syndrome, and lesion of the right ulnar nerve."[19] They were not, however, individually or in combination severe enough to meet or equal an impairment listed in the appendix to the regulations.[20] The ALJ found that Plaintiff could still perform "sedentary work," with certain limitations,[21] and that there are

---

[11] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[12] *Id*.
[13] 20 C.F.R. § 404.1545(a)(1).
[14] *Id*. at § 404.1546(c); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).
[15] *Perez*, 415 F.3d at 461-62.
[16] *See* 20 C.F.R. §§ 404.1529(d)(4), 404.1545(a)(2).
[17] *Perez*, 415 F.3d at 462; 20 C.F.R. § 404.1520(e).
[18] *Id*.
[19] R:20.
[20] R:24-25.
[21] R:25-30. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

3

jobs in the national economy that he can perform.[22] Accordingly, the ALJ found Plaintiff not disabled and not entitled to disability insurance benefits.[23]

### D. Leg Swelling.

Plaintiff was earning more than $100,000.00 annually working for Boeing as a manager until August 16, 2019,[24] exactly one week before he alleges he became disabled. At Boeing he ensured that his department met its scheduling commitments, ensured his people were properly certified, oversaw his department's safety checks, and ran the daily morning meetings.[25] He also coordinated the return of Air Force bombers to service and interfaced with government agency representatives and defense contractors.[26] Finally, he assisted in transitioning Boeing's work to new plants by ensuring that the "right planes and right equipment went to the right facilities."[27] He stopped working because Boeing closed his plant and transferred the work to Alabama and South Korea.[28] Boeing wanted to transfer Plaintiff to one of its other plants, but Plaintiff testified that he believed his health prevented such a transfer.[29] The ALJ noted that "[t]he fact [Plaintiff] was offered a relocation package when the plant closed indicates [he] was performing well at his job."[30]

Plaintiff argues that the ALJ's RFC findings did not adequately address his leg swelling. The ALJ noted[31] Plaintiff's testimony that his "legs swell up a lot," he "can't even sit like in a

---

[22] R:30-31.
[23] R:31.
[24] R:43.
[25] R:45.
[26] R:45-46.
[27] R:46.
[28] R:43.
[29] R:59-60.
[30] R:28.
[31] R:26.

4

chair very long because it cuts off [his] circulation,"[32] and his legs fall asleep if he sits for "20, 30, 40 minutes in a regular chair."[33] The ALJ also noted that Plaintiff needs help putting on his boots because of swelling[34] and wears sandals.[35] The ALJ took particular note that in May 2019, when Plaintiff was still working for Boeing, treating physician Dr. Ramirez found that Plaintiff had a normal gait and normal strength in his lower extremities even though his legs were swollen.[36] The same treating physician made these exact same findings in January 2020, during Plaintiff's claimed disability period.[37] Accordingly, Plaintiff's leg swelling, both while working for Boeing and later during his disability period, did not affect his ability to work, walk, or diminish his leg strength.

Other doctors' examination results were similar. In September 2019, one month after Plaintiff's disability onset date, Dr. Marrero found no swelling in Plaintiff's extremities and recorded that Plaintiff had no musculoskeletal or neurologic complaints.[38] In a February 2020 function report, Plaintiff did not list edema or swelling as an "illness, injur[y], or condition limit[ing] [his] ability to work."[39] Dr. West found no swelling and full strength in Plaintiff's extremities during an April 2020 exam.[40] Dr. West also found that Plaintiff could "with ease": squat and rise, rise from a sitting position without assistance, get up and down from the exam table, and walk on his heels and toes.[41] Finally, Dr. West found Plaintiff had "no limitations with sitting, standing or walking."[42]

---

[32] R:48.
[33] R:51.
[34] R:210.
[35] R:53.
[36] R:333.
[37] R:315.
[38] R:306-07.
[39] R:209.
[40] R:409-10.
[41] R:411.
[42] *Id*.

In August 2020, Dr. Maldonado found no swelling and full strength in Plaintiff's extremities and major muscle groups.[43] That same month, however, Dr. Ramirez noted edema in Plaintiff's lower extremities but normal gait and strength, just as he did when Plaintiff was still working for Boeing.[44] Dr. Ramirez made the same exact findings in November 2020.[45] In February 2021, Dr. Maldonado noted lower extremity swelling.[46]

Plaintiff argues that the "ALJ does not address whether he finds the Plaintiff's need to elevate his legs daily to be credible,"[47] but such daily "need" is not reflected in any medical record nor in Plaintiff's testimony. Plaintiff testified that his doctor "told [him], well, *if you have to*, lay down and put your leg up on a cushion" if medication does not relieve the swelling.[48]

Plaintiff next argues that the ALJ does not address "whether the Plaintiff's limited ability to sit for 20-40 minutes is credible,"[49] but this alleged limitation is based only on Plaintiff's testimony that he needs to stand up after sitting in a regular chair for forty minutes.[50] The ALJ noted this testimony,[51] but also noted that Dr. West's April 2020 physical exam found "no limitations with sitting, standing, or walking."[52] "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve."[53]

Plaintiff's argument that the "ALJ failed to address whether the Plaintiff's need to wear sandals impacts his ability to hold a job"[54] also fails. This alleged need derives from Plaintiff's

---

[43] R:479.
[44] R:428-29.
[45] R:456-57.
[46] R:493.
[47] Doc. No. 18, at 16.
[48] R:51 (emphasis added).
[49] Doc. No. 18, at 16.
[50] R:50-51.
[51] R:26-27.
[52] R:22.
[53] *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).
[54] Doc. No. 18, at 16.

testimony that he wears sandals "[b]ecause my feet are so swollen *sometimes*," and "always."[55] I note that Plaintiff provided a statement in February 2020 that he still wears boots,[56] and as explained above, Plaintiff's physicians more often than not found no swelling during physical examinations. Finally, Plaintiff argues that "the medical records contain photographs of [Plaintiff's] lower extremity edema,"[57] but these photographs[58] are undated, not associated with any medical records, and list Plaintiff himself as their source.[59] There is, therefore, no objective evidence supporting Plaintiff's sandals argument.

Plaintiff's argument that the "ALJ failed to consider the fact that Plaintiff's edema would periodically 'wax and wane'" also fails. The *Frank* case on which he relies holds "that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time."[60] As explained above, Plaintiff had leg swelling both while he was working for Boeing and after, and his medical records reflect no limitations with respect to leg strength or mobility. So while the swelling itself may be intermittent, there is nothing in the record showing that it is "of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time."

Plaintiff's final argument about "improper credibility analysis" is a long reiteration of the above arguments that generally asserts the ALJ insufficiently explained his findings and

---

[55] R:53-54.
[56] R:210.
[57] Doc. No. 18, at 4.
[58] R:488-89.
[59] R:35 (listing "Claimant" as the source of Exhibit 13F).
[60] *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003), citing *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002).

conclusions. My review of the record, however, reflects that substantial evidence supports the ALJ's decisions on these issues and he applied the proper legal standards, as explained above.

### E. Deep Tendon Reflexes.

Plaintiff next argues that the ALJ insufficiently reconciled two differing medical opinions about Plaintiff's deep tendon reflexes. Whereas Dr. Maldonado found in February 2020 and February 2021 that Plaintiff's "deep tendon reflexes of the in (sic) upper and lower extremities are absent,"[61] Dr. West found normal and symmetrical reflexes in April 2020.[62] The ALJ noted "[t]here is some discrepancy regarding deep tendon reflexes"[63] and thoroughly discussed the findings of both Drs. Maldonado and West, harmonizing their (and other) findings as follows:

> The claimant's physical examinations subsequent to his alleged onset date of August 23, 2019 are essentially the same. His medical examinations have consistently shown normal gait, normal muscle strength and tone of 5/5. At most, he has had decreased sensations from (sic) bottom of his feet to 6 cm above his ankles bilaterally and 4 cm above his wrist bilaterally.[64]

The ALJ cites Dr. Maldonado's records to support the last sentence's reference to decreased sensations,[65] while finding Dr. West's findings not wholly persuasive because they were "not completely consistent with the exam."[66] Accordingly, the ALJ's RFC finding that Plaintiff can perform sedentary work, the most restrictive level of work, reflects the ALJ's adoption of Dr. Maldonado's more restrictive assessment of Plaintiff's abilities, while giving credence to both doctors' findings that Plaintiff had normal gait, strength, and mobility and no sitting deficits. Substantial evidence supports the ALJ's decision on these issues, he applied the proper legal standards, and he acknowledged and explained his findings with respect to the differing medical opinions.

---

[61] R: 483-84; 493.
[62] R:410.
[63] R:29.
[64] R:28.
[65] *Id*.
[66] R:30.

**F. Frequent Urination.**

Plaintiff testified that "the medication I'm taking, I have to go to the restroom a lot," and argues that this single sentence "may be sufficient to render Plaintiff unemployable."[67] Neither Plaintiff nor his hearing counsel explained what "a lot" means, and his counsel advanced no arguments in this regard to the ALJ. Moreover, Plaintiff's medical records, both before and after his disability onset date, reflect no complaints about frequent urination.[68] The ALJ committed no error with respect to Plaintiff's frequent urination argument.

## Conclusion

The ALJ properly considered all the medical evidence in this case, substantial evidence supports his decision, and there is no legal error.

**AFFIRMED**.

**SIGNED** and **ENTERED** March 31, 2023.

**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**

---

[67] Doc. No. 18, at 30.
[68] R:267 (October 2018: "Genitourinary: Denies: urgency, frequency…"); 269 (October 2018: "Urinary: Denies frequency"); 273 (March 2019: "Patient denies…urinary frequency…urinary urgency"); 277 (September 2018: "Patient denies…urinary frequency…urinary urgency"); 306 (September 2019: "GENITOURINARY: No complaints."); 391 (November 2018: "Genitourinary – Denied:…Urine urgency…"); 408 (April 2020: "GU: Negative").